IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REMINGTON SCOTT,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MANTECH INTERNATIONAL CORP.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY COMPANIES 1-10; DOE PARTNERSHIPS 1-10; DOE NON-PROFIT CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>　　　　　Defendants. | Civ. No. 18-00359 JMS-RT<br><br>ORDER GRANTING MOTION TO DISMISS COUNT II OF THE COMPLAINT, ECF NO. 5 |

## ORDER GRANTING MOTION TO DISMISS COUNT II OF THE COMPLAINT, ECF NO. 5

### I. INTRODUCTION

On September 24, 2018, Plaintiff Remington Scott ("Scott") filed a

Complaint alleging claims against Defendants ManTech International Corp.

("ManTech"), John Does 1-10, Jane Does 1-10, Doe Corporations 1-10, Doe

Limited Liability Companies 1-10, Doe Partnerships 1-10, Doe Non-Profit

1

Corporations 1-10, and Doe Governmental Entities 1-10, alleging racial discrimination, disability discrimination, and retaliation. Compl., ECF No. 1.

Currently before the court is ManTech's Motion to Dismiss the disability discrimination claim (Count II)[1] for lack of subject matter jurisdiction for failure to exhaust administrative remedies. ECF No. 5. Based on the following, the Court GRANTS ManTech's Motion to Dismiss with prejudice.

## II. **BACKGROUND**

**A.    Allegations in the Complaint**

The Complaint alleges the following: Scott, who is of "Filipino and African-American ancestry," served in Iraq and Afghanistan in the U.S. Army before his honorable discharge in 2011. Compl. ¶¶ 9-14. Scott believes he developed Post-Traumatic Stress Disorder (PTSD) as a result of his army service, although he was not diagnosed with PTSD until 2015. *Id.* ¶ 15. ManTech employed Scott starting in August 2012, and in June 2016, Scott accepted a transfer to Kuwait, which included a 10% increase in pay and a daily food stipend. *Id.* ¶¶ 16-17. Prior to this transfer, Scott had received generally positive performance reviews, had not been disciplined by ManTech for his work

---

[1] Although the Motion to Dismiss seeks dismissal of Counts II and IV, Count IV was dismissed by stipulation on January 4, 2019. ECF No. 26.

performance or behavior, and had not experienced any misconduct while at ManTech.  *Id.* ¶ 18.

Soon after the transfer, Scott's supervisor, Derrick Traughber, told Scott that "half-black and half-Filipinos aren't allowed in the office" in front of another person, Fletcher Smith.  *Id.* ¶¶ 19-21.  Not long after, Traughber told Scott that he would enjoy living with a coworker because "you both are Filipino and eat the same food."  *Id.* ¶ 22.  A few months later in November 2016, Traughber told another person, Tonia Cannon, that Scott was a "whore."  *Id.* ¶ 23.  Scott made a formal complaint to ManTech in January 2017 concerning Traughber's behavior and ManTech stated that its review corroborated Scott's claim about Traughber's comments.  *Id.* ¶¶ 24-25.

Soon after making the complaint, Scott alleges that he was retaliated against in the following ways: (1) Scott was required to wear safety goggles when others were not; (2) Scott's requests for repairs to the vehicle he was assigned to drive were denied and as a result the vehicle was unsafe to drive; (3) on February 15, 2017, when Scott refused to drive the unsafe vehicle, he was reprimanded by two supervisors, including Jeffrey Bentley ("Bentley"); (4) the next day, Bentley did not allow Scott to take a lunch break; and (5) the day after

3

that, Bentley hostilely ordered Scott to get out of his vehicle in front of other employees and did not allow him to return to work that day. *Id.* ¶ 26.

As a result of this alleged hostile work environment, Scott asked ManTech to transfer him back to Hawaii, which was approved. *Id*. Six hours after the transfer was approved, Scott contacted ManTech and requested that the transfer be cancelled, but ManTech refused his request. *Id.* Scott then resigned from his position on April 1, 2017. *Id.* The Complaint alleges that Scott resigned "due to the discriminatory and retaliatory treatment received from ManTech and out of frustration and disappointment[.]" *Id.* The Complaint also alleges that Scott resigned because of his PTSD, which was exacerbated due to the discrimination and retaliation at ManTech. *Id.* ¶ 27.

**B.     Scott's Interactions with the EEOC**

Scott filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 28, 2017.[2] *See* ECF Nos. 7-1 at 1-2, 24-2 at 1-2. Prior to filing that charge, Scott filed a pre-complaint (intake) questionnaire on August 7, 2017. *See* ECF No. 24-2 at 3.

---

[2] According to the Complaint, Scott filed a charge of discrimination with the EEOC and the Hawaii Civil Rights Commission on or about August 7, 2017 and August 28, 2017, respectively. Compl. ¶¶ 31, 32. However, both parties provided the court with a copy only of the EEOC charge, which was stamped received by the EEOC on August 28, 2017. ECF Nos. 7-1 at 1-2, 24-2 at 1-2. Ultimately, it does not matter for this analysis whether the date of filing was August 7, 2017 or August 28, 2017.

4

Scott's pre-complaint questionnaire states, in relevant part:

**1. Personal Information**
. . . .
Do You Have a Disability? ☒ Yes ☐ No
. . . .
**4. What is the reason (basis) for your claim of employment discrimination?**
. . . .
☒ Race ☐ Sex ☐ Age ☐ Disability
☒ National Origin ☐ Religion ☒ Retaliation
☐ Pregnancy ☒ Color (typically a difference in skin shade within the same race) ☐ Genetic Information . . .
. . . .
**6. Why do you believe these actions were discriminatory? . . .**
I believe these actions were discriminatory because the comments deeply offended me and affected my mental state.
. . . .
**Answer questions 9-12 only if you are claiming discrimination based on disability. . . .**

**9. Please check all that apply:**
☒ Yes, I have a disability
☐ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? . . .**
N/A

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
☐ Yes
☒ No
. . . .
**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**
☐ Yes
☒ No
. . . .

ECF No. 24-2 at 3-5 (formatting altered).

Scott's EEOC charge of discrimination states, in relevant part:

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION
☒ NATIONAL ORIGIN ☒ RETALIATION ☐ AGE
☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*
. . . .
THE PARTICULARS ARE . . .

In August 2012, I began working for the above-named employer. My last job title was Heavy Equipment Mechanic. On or about January 19, 2017, I complained to Respondent about race and national origin harassment by a Shop Forman Derrick Traughber (Black male). I also complained that Traughber made called [sic] a "whore."

Due to my protected activity, I was subjected to retaliation. On February 4, 2017, management abruptly changed how I performed some of my work tasks and

failed to respond to my request to repair my vehicle in a timely manner. I complained to Respondent about retaliation.

On February 16, 2017, Shop Foreman Jeffrey Bentley refused to allow me to take my lunch break and required [sic] to come into a meeting with Senior Maintenance Supervisor Leon Drake. Bentley and Drake proceeded to verbally reprimand me about my about my [sic] refusal to transport solders [sic] to their homes.

In response, I reiterated my safety concerns about my work vehicle. Nevertheless, Bentley directed me to go home and not report to work. Subsequently, I contacted Human Resources and complained about the incident and was advised to report to report to [sic] work the following day. The next day, I got into the employee transport vehicle to go [sic] the worksite. However, Bentley ordered me to get out [sic] the vehicle in a hostile manner in front of other employees. Thus, I was not allowed to go to work that day. Afterwards, I contacted management official David Weiss and left a phone message. Later, I was given a directive to report to work the following day.

Due to the hostile and retaliatory work environment, I contacted Respondent to request a transfer assignment back to Hawaii. About six hours later, I changed my mind about the transfer to Hawai'i [sic] and requested to remain working in Kuwait. However, Respondent denied my request citing the transfer was already in motion.

On or about March 17, 2017, Respondent sent me an email with respect to their investigation findings of my complaints. I do not believe Respondent properly investigated my retaliation clams [sic] and took appropriate action.

> On April 1, 2017, I tendered my resignation to Respondent.
>
> I believe Respondent discriminated against me because of my race (Black/Asian) and national origin (Filipino), in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe Respondent retaliated against me for engaging in protected activity.

ECF Nos. 7-1 at 1-2, 24-2 at 1-2 (formatting altered). Nowhere does the charge mention disability discrimination.

The EEOC issued its dismissal on June 26, 2018, and the Hawaii Civil Rights Commission ("HCRC") issued its dismissal on July 18, 2018. Compl. ¶¶ 33-34; *see also* ECF Nos. 7-2, 7-3.

**B.  Procedural History**

On September 24, 2018, Scott filed the Complaint, bringing the following claims: Count 1 (Racial Discrimination; Title VII of the Civil Rights Act ("Title VII")); Count II (Disability Discrimination; Americans with Disabilities Act ("ADA")); Count III (Racial Discrimination; Hawaii Revised Statutes ("HRS") Ch. 378); Count IV (Disability Discrimination; HRS Ch. 378); Count V (Retaliation); Count VI (Constructive Termination); Count VII (Harassment); Count VIII (Intentional and/or Negligent Infliction of Emotion Distress). ECF No. 1. On January 4, 2019, Counts III, IV, VI, VII, and VIII were dismissed by stipulation. ECF No. 26.

On October 24, 2018, ManTech filed the instant Motion to Dismiss Counts II and IV (the "Motion"), and separately filed a declaration and exhibits in support of the Motion. ECF Nos. 5, 7. On December 31, 2018, Scott filed his Opposition. ECF No. 24. On January 7, 2019, ManTech filed its Reply. ECF No. 27. A hearing was held on January 22, 2019.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction. The court may determine jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation marks omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

///

///

///

## IV. <u>DISCUSSION</u>

ManTech argues that Count II must be dismissed for lack of subject matter jurisdiction because Scott failed to exhaust his administrative remedies for claims premised on disability discrimination. ECF No. 5-1 at 26-27. The court agrees, and because the statute of limitations has passed for Scott to seek administrative remedies for these claims, the court dismisses Count II with prejudice.

**A.      Legal Framework**

In order to establish subject matter jurisdiction over an ADA claim, a plaintiff must exhaust his or her administrative remedies. *See Flores v. United States*, 2016 WL 6609175, at *4 (D. Haw. Nov. 8, 2016). The ADA has the same exhaustion requirements as Title VII. *See id.* To bring either a Title VII claim or an ADA claim in Hawaii, a plaintiff must file a charge with the EEOC within 300 days[3] of the last alleged unlawful employment practice, and then plaintiff must institute his or her action within ninety days from when the EEOC issues the right to sue letter. *See Pratt v. Haw., Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1142

---

[3] Hawaii is a "worksharing" state "such that administrative claims filed with the EEOC are deemed 'dual-filed' with the state's local agency [the HCRC] and vice versa." *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1090 n.2 (D. Haw. 2012). In a "worksharing" state the limitations period is extended to 300 days by statute. *Id.*

(D. Haw. 2018). The purpose of these requirements is to "giv[e] the charged party notice of the claim and 'narrow[] the issues for prompt adjudication and decision.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

*B.K.B.* explains that subject matter jurisdiction extends to: (1) allegations that actually fall within the EEOC's investigation; or (2) an EEOC investigation which "can reasonably be expected" to grow out of the charge. *Id.* at 1100 (quoting *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (emphasis omitted)). Further,

> [a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge. In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*Id.* at 1100 (citations and internal editorial marks omitted). Thus, the jurisdictional scope of an action "depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

The language of EEOC charges is construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B.*, 276 F.3d at 1100 (citations and quotation marks omitted). "The crucial element of a charge of discrimination is the factual statement contained therein." *Id.* (citations and quotation marks omitted).

### B. Application of Legal Framework

During the January 22, 2019 hearing, Scott conceded that his charge of discrimination, standing alone, does not encompass a disability discrimination claim. The court agrees. As a starting point, Scott did not check the "disability" box on the charge to indicate that his allegations of discrimination were based on disability. *See* ECF No. 24-2 at 1. Instead, Scott only checked the boxes for "race," "retaliation," and "national origin." *Id.* Further, the written description of his allegations does not mention that Scott had PTSD or that he was otherwise disabled. *Id.* at 1-2.

In Scott's briefing, however, he argues that the scope of the EEOC charge encompasses disability discrimination because Scott checked the

"retaliation" box on the EEOC charge and he was allegedly retaliated against after disclosing his disability to ManTech. ECF No. 24 at 7. Scott relies on *Farmer Brothers* to support his argument. *Id.*

In *Farmer Brothers*, the plaintiff's theory was that the defendant had a scheme to avoid the appearance of gender discrimination by laying off women and men, waiting until their nine-month recall rights had expired, and then hiring back only men. 31 F.3d at 899. *Farmer Brothers* held that, even assuming that the EEOC charge did not explicitly raise a claim of discriminatory layoff, "in order to evaluate (or even to understand) [plaintiff's] theory of the case, it was *necessary* for the EEOC to investigate the circumstances of [plaintiff's] layoff." *Id.*

The situation in *Farmer Brothers* is not like Scott's — Scott failed to present a theory in his charge where an EEOC investigation into disability discrimination would "reasonably be expected to grow out of the charge of discrimination." *B.K.B.*, 276 F.3d at 1100 (quoting *Farmer Brothers*, 31 F.3d at 899) (emphasis omitted). Further, Scott presents no evidence that the EEOC did in fact investigate Scott's disability discrimination claim. Scott only presents a Position Statement submitted to the EEOC from ManTech, which mentions Scott's disability but does not include any information that might initiate an investigation into possible disability discrimination. *See generally* ECF No. 24-3. Thus, Scott

13

did not show sufficient evidence that the scope of the EEOC charge and the EEOC's investigation encompassed Scott's disability discrimination claim.

Scott next asks the court to also review the pre-complaint questionnaire that Scott completed prior to his EEOC charge. ECF No. 24 at 2, 6-8. Man-Tech argues that *B.K.B.* dictates that the court should not consider the pre-complaint questionnaire in its analysis. ECF No. 27 at 2-3. The court agrees, under the facts of this case, that the court should not consider the pre-complaint questionnaire.

*B.K.B.* analyzed whether the plaintiff had neglected to include specific allegations of sexual harassment in her charge to the HCRC. 276 F.3d at 1100. *B.K.B.* determined that (although it was a close question) the plaintiff had sufficiently made out allegations of sexual harassment, and thus had exhausted her administrative remedies. *Id.*

In the HCRC charge, the plaintiff in *B.K.B.* checked boxes to indicate that she believed she had been subjected to "race," "sex," and "national origin" discrimination. *Id.* The facts presented in the charge, however, were "exceedingly sparse": "Plaintiff lists what she calls allegations of 'race and retaliation harassment,' including harassment 'of a verbal nature' perpetrated by [her

supervisor] and 'further harassment' following her submission of a formal complaint memorandum to [the police captain]." *Id.*

The plaintiff argued that the court should also consider her pre-complaint questionnaire when analyzing the scope of her charge. *Id.* at 1101. *B.K.B.* reasoned that because "the charge is intended to satisfy the dual purpose of establishing notice of the complainant's claims both to the agency and to the named respondent," consideration of the pre-complaint questionnaire "may impair part of its statutory purpose" because the respondent does not receive a copy of the questionnaire. *Id.* (emphasis omitted). Nevertheless, *B.K.B.* considered the pre-complaint questionnaire because the agency in that case was negligent in helping the plaintiff prepare her charge: "[W]e do not take the respondent's notice of the charge itself to be of paramount consideration where the failure of notification is due to agency negligence. . . . Any other rule would be inconsistent with the remedial purposes of the statute." *Id.* at 1101-02 (citations and internal editorial marks omitted). And *B.K.B.* recognized that its holding was narrow: "[i]f the charge itself is deficient in recording her theory of the case *due to the negligence of an agency representative who completes the charge form*, then the plaintiff may

present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted." *Id.* at 1102 (emphasis added).[4]

ManTech argues that *B.K.B.* is distinguishable from this case, ECF No. 27 at 3, and the court agrees. Unlike the plaintiff in *B.K.B.*, Scott has not presented any evidence that the EEOC negligently prepared Scott's charge. *B.K.B.* gives courts leave to review the pre-complaint questionnaire only if there is some degree of negligence on the agency's part in completing the charge form, and Plaintiff provides no other grounds on which to review the questionnaire. *B.K.B.*, 276 F.3d at 1102. Thus, under *BKB*, the court should not review the pre-complaint questionnaire.[5]

But even if the court did review the pre-complaint questionnaire, the questionnaire does not expand the scope of the charge to include a disability

---

[4] In *B.K.B.*, although there was no explicit admission of agency negligence, the declaration by the HCRC official assisting the plaintiff suggested that the sparseness of the charge's factual allegations should be attributed to HCRC staff rather than the plaintiff. 276 F.3d at 1102. The declaration also stated that HCRC was on notice of the plaintiff's intent to pursue sexual harassment claims. *Id.* Further, the declaration made clear that someone at HCRC typed the factual allegations for plaintiff. *Id.*

[5] *B.K.B.* is distinguishable from this case in other ways as well. Unlike the plaintiff in *B.K.B.*, Scott did not indicate in any way that he was bringing the disputed type of discrimination claim in the charge. In *B.K.B.*, the plaintiff checked the box labeled "sex" to indicate what her allegations of discrimination were based on. 276 F.3d at 1100. Here, Scott did not check the "disability" box on the charge form. *See* ECF No. 24-2 at 1. Also, in *B.K.B.*, the factual allegations in the charge were "exceedingly sparse." 276 F.3d at 1100. Here, Scott provided a fair degree of detail in making his factual allegations in the charge. *See* ECF Nos. 24-2 at 1-2.

discrimination claim. In the questionnaire, Scott did not check the "disability" box, when asked "What is the reason (basis) for your claim of employment discrimination?" ECF No. 24-2 at 2. Scott argues that the court should consider that he answered question 9 in the pre-complaint questionnaire by checking the box "Yes, I have a disability," when the questionnaire states, "Answer questions 9-12 only if you are claiming discrimination based on disability." *See* ECF No. 24 at 3-4, 8-9. But, nowhere else in the pre-complaint questionnaire does Scott indicate that he was discriminated against based on his disability. In fact, under question 10, which asks "What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?" Scott answered "N/A." ECF No. 24-2 at 5. Further, when asked "Did you ask your employer for any changes or assistance to do your job because of your disability?" Scott checked the "No" box. *Id.* A fair inference from these actions is that Scott may consider himself to have a disability, but was not discriminated against because of that disability nor was he retaliated against based on such complaints. Thus, even if the court considered the pre-complaint questionnaire, it does not expand the scope of Scott's EEOC charge.

In sum, Scott did not exhaust his administrative remedies with regard to his disability discrimination claims. Because Scott quit his job at ManTech on

April 1, 2017, Compl. ¶ 26, (thus ending any alleged disability discrimination), over 300 days have passed since the alleged misconduct. As a result, Scott cannot bring a new charge of disability discrimination against ManTech, and accordingly any amendment to the Complaint concerning Count II would be futile. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

## V. <u>CONCLUSION</u>

For the foregoing reasons, ManTech's Motion to Dismiss Count II of the Complaint is GRANTED. Counts II is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 29, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scott v. ManTech Int'l, Corp.*, Civ No. 18-00359 JMS-KSC, Order Granting Motion to Dismiss Count II of the Complaint, ECF No. 5