IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| REMINGTON SCOTT, | Civ. No. 18-00359 JMS-RT |
| --- | --- |
| Plaintiff, | ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 29, AND DENYING MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 33 |
| vs. | |
| MANTECH INTERNATIONAL CORP.; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY COMPANIES 1-10; DOE PARTNERSHIPS 1-10; DOE NON-PROFIT CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 29, AND DENYING MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 33**

**I. INTRODUCTION**

On September 24, 2018, Plaintiff Remington Scott ("Scott") filed a

Complaint alleging claims against Defendants ManTech International Corp.

("ManTech"), John Does 1-10, Jane Does 1-10, Doe Corporations 1-10, Doe

Limited Liability Companies 1-10, Doe Partnerships 1-10, Doe Non-Profit

1

Corporations 1-10, and Doe Governmental Entities 1-10, alleging hostile work environment based on racial discrimination (Count I) and retaliation (Count V).[1] Compl., ECF No. 1.

Currently before the court are (1) ManTech's Motion for Judgment on the Pleadings (Count I — Hostile Work Environment based on Racial Discrimination) and (2) ManTech's Motion for Judgment on the Pleadings (Count V — Retaliation). Based on the following, the court GRANTS Mantech's Motion for Judgment on the Pleadings for Count I, and DENIES Mantech's Motion for Judgment on the Pleadings for Count V.

## II. **BACKGROUND**

**A.    Allegations in the Complaint**

The Complaint alleges the following: Scott, who is of "Filipino and African-American ancestry," served in Iraq and Afghanistan in the U.S. Army before his honorable discharge in 2011. ECF No. 1, Compl. ¶¶ 9-14. Scott believes he developed Post-Traumatic Stress Disorder (PTSD) as a result of his army service, although he was not diagnosed with PTSD until 2015. *Id.* ¶ 15. ManTech employed Scott starting in August 2012, and in June 2016, Scott

---

[1] The Complaint brought several additional claims that were dismissed either by stipulation, ECF No. 26, or in a previous order, ECF No. 32.

accepted a transfer to Kuwait, which included a 10% increase in pay and a daily food stipend. *Id.* ¶¶ 16-17. Prior to this transfer, Scott had received generally positive performance reviews, had not been disciplined by ManTech for his work performance or behavior, and had not experienced any misconduct while at ManTech. *Id.* ¶ 18.

Soon after the June 2016 transfer, Scott's supervisor, Derrick Traughber, told Scott that "half-black and half-Filipinos aren't allowed in the office" in front of another person, Fletcher Smith. *Id.* ¶¶ 19-21. Not long after, Traughber told Scott that he would enjoy living with a coworker because "you both are Filipino and eat the same food." *Id.* ¶ 22. In November 2016, Traughber told another person, Tonia Cannon, that Scott was a "whore." *Id.* ¶ 23. Scott made a formal complaint to ManTech in January 2017 concerning Traughber's behavior and ManTech's review corroborated Scott's claim about Traughber's comments. *Id.* ¶¶ 24-25.

Soon after making the complaint, Scott alleges that he was retaliated against in the following ways: (1) Scott was required to wear safety goggles when others were not; (2) Scott's requests for repairs to the vehicle he was assigned to drive were denied and as a result the vehicle was unsafe to drive; (3) on February 15, 2017, when Scott refused to drive the unsafe vehicle, he was

reprimanded by two supervisors, including Jeffrey Bentley ("Bentley"); (4) the next day, Bentley did not allow Scott to take a lunch break; and (5) the day after that, Bentley ordered — in a hostile manner and in front of other employees — Scott to get out of his vehicle and did not allow him to return to work that day. *Id.* ¶ 26.

In response to these incidents, Scott asked ManTech to transfer him back to Hawaii, which was approved. *Id*. Six hours after the transfer was approved, Scott contacted ManTech and requested that the transfer be cancelled, but ManTech refused his request. *Id.* Scott then resigned from his position on April 1, 2017. *Id.* The Complaint alleges that Scott resigned "due to the discriminatory and retaliatory treatment received from ManTech and out of frustration and disappointment[.]" *Id.* The Complaint also alleges that Scott resigned because of his PTSD, which was exacerbated due to the discrimination and retaliation at ManTech. *Id.* ¶ 27.

**B.    Procedural History**

On September 24, 2018, Scott filed the Complaint, bringing the following claims: Count 1 (Hostile Work Environment based on Racial Discrimination; Title VII of the Civil Rights Act ("Title VII")); Count II (Disability Discrimination; Americans with Disabilities Act ("ADA")); Count III

(Racial Discrimination; Hawaii Revised Statutes ("HRS") Ch. 378); Count IV (Disability Discrimination; HRS Ch. 378); Count V (Retaliation); Count VI (Constructive Termination); Count VII (Harassment); Count VIII (Intentional and/or Negligent Infliction of Emotional Distress). ECF No. 1. On January 4, 2019, Counts III, IV, VI, VII, and VIII were dismissed by stipulation. ECF No. 26. On January 29, 2019, Count II was dismissed pursuant to the court's previous order. ECF No. 32.

On January 17, 2019, ManTech filed its Motion for Judgment on the Pleadings (Count I — Hostile Work Environment based on Racial Discrimination). ECF No. 29. On January 29, 2019, ManTech filed its Motion for Judgment on the Pleadings (Count V — Retaliation). ECF No. 33. On February 18, 2019, Scott filed his Opposition. ECF No. 35. On February 25, 2019, ManTech filed its Replies. ECF Nos. 38, 39. A hearing was held on March 11, 2019.

### III. **STANDARD OF REVIEW**

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a means to challenge the sufficiency of the complaint after an answer has been filed." *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1281 (N.D. Cal. 2005) (quotation marks and citation omitted). A party may make a motion for judgment on the pleadings at any time after the pleadings are closed, but within

such time as to not delay the trial. Fed. R. Civ. P. 12(c). Because the issue presented by a Rule 12(c) motion is substantially the same as that posed in a 12(b)(6) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief — the same standard applies to both. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 & n.4 (9th Cir. 2011); *see also Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).

A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable

to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

A motion for judgment on the pleadings is properly granted when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted). Judgment on the pleadings is not appropriate if the court considers matters outside of the pleadings; in such cases, the motion must be converted to a Rule 56 motion for summary judgment, and the non-moving party must be granted an opportunity to respond. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The court may, however, "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice

— without converting the motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. **DISCUSSION**

ManTech argues both Count I (Hostile Work Environment based on Racial Discrimination) and Count V (Retaliation) fail to state a claim. The court agrees as to Count I, but disagrees as to Count V.

**A.     Hostile Work Environment**

*1.     Legal Framework*

To establish a prima facie case of hostile work environment under Title VII that is premised on either race or sex, a plaintiff must show: "(1) that [plaintiff] was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

The third element[2] requires consideration of "the totality of the circumstances and whether the harassment was both objectively and subjectively

---

[2] ManTech bases its challenge solely on the third element.

abusive." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006) (citing *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002)).[3] For the objective inquiry, the court assesses "allegations of a racially hostile workplace . . . from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004); *see also Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017).

In reviewing at the totality of the circumstances, the court examines "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). Only "extreme" conduct can "amount to a change in the terms and conditions of employment," *id.* (quoting *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999)), although "[t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the

---

[3] Although *Freitag* involved sexual harassment, the same framework applies to a hostile work environment claim based on racial discrimination. *Vasquez*, 349 F.3d at 642 ("Because the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant . . . .").

9

conduct," *Reynaga*, 847 F.3d at 687 (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001). "Simply causing an employee offense based on an isolated comment is not sufficient . . . [h]owever, the harassment need not cause [the employee] diagnosed psychological injury." *McGinest*, 360 F.3d at 1113 (citations and quotation marks omitted). Rather, "[i]t is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* (citations and quotation marks omitted).

## 2. *Application*

ManTech argues that Scott has not pled sufficient facts to establish a hostile work environment claim because Scott only presents two incidents of racial harassment: (1) a supervisor, Traughber, telling him that "half-black and half-Filipinos aren't allowed in the office"; and (2) Traughber telling Scott that he would enjoy living with a coworker because "you both are Filipino and eat the same food." ECF No. 29 at 11, 14. Scott argues that an additional incident should be considered as racial harassment — when Traughber allegedly told another

person that Scott was a "whore" — because that conduct cannot be "disassociated from race." ECF No. 35 at 11.[4]

The court finds that Scott fails to allege sufficiently severe or pervasive conduct to alter the conditions of Scott's employment and create an abusive work environment. The first two statements (Traughber stating to Scott that "half-black and half-Filipinos aren't allowed in the office," and Traughber telling Scott that he would enjoy living with a coworker because "you both are Filipino and eat the same food") are without doubt race-based and extremely offensive. But these statements, even coupled with the reference to Scott as a "whore," are insufficient to show a "workplace [that] was [objectively] hostile from the perspective of a reasonable person belonging to the plaintiff's racial . . . group." *Reynaga*, 847 F.3d at 687.

The court's conclusion is based on prior Ninth Circuit cases finding no hostile work environment in similar (or even in more egregious and pervasive) incidents than those alleged here. For example, *Manatt v. Bank of America NA*, 339 F.3d 792 (9th Cir. 2003), found no hostile work environment when, over the

---

[4] ManTech disagrees, arguing that this incident was not discriminatory, and even if it was discriminatory, that it was discriminatory based on sex not race. ECF No. 29-1 at 8 n.1. For the purposes of this motion, the court will assume that there is some, even if minimal, racial animus behind this statement.

11

span of two-and-a-half years, coworkers: (1) had a number of conversations in the vicinity of plaintiff that referenced "China man," "rickshaw[s]," and "communists"; (2) on one occasion mocked plaintiff by pulling their eyes back in an attempt to mock the appearance of Asian people; and (3) on one occasion, mocked the plaintiff's pronunciation of a word and attributed the pronunciation to her race, while calling her a "China woman." *Id.* at 795-96, 799. *Vasquez* found no hostile work environment when a coworker: (1) told plaintiff that he had a "typical Hispanic macho attitude"; (2) six months later told plaintiff that he should take a job in the field because "Hispanics do good in the field"); (3) yelled at plaintiff on two occasions; and (4) made two written complaints about plaintiff. 349 F.3d at 642-44. Finally, *Kortan* determined there was insufficient evidence to establish a hostile work environment when a supervisor made offensive comments about women — such as "castrating bitch," "Madonna," "regina," "bitches," and "histrionics." 217 F.3d at 1107, 1110-11; *see also Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 F. App'x 181, 183 (9th Cir. 2010).

      While the court is in no way minimizing Traughber's behavior towards Scott, under the totality of the circumstances, Scott does not allege sufficient facts to show that a reasonable person would find the workplace hostile under Title VII. Accordingly, Count I is DISMISSED with leave to amend.

**B.      Retaliation**

   *1.      Legal Framework*

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag*, 468 F.3d at 541.

Under the second element,[5] "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and quotation marks omitted).  In applying this test, "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters." *Id.* at 69.  These two prongs of the *Burlington* standard — the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position — work to "screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69-70.

---

   [5] ManTech does not challenge that Scott sufficiently pled the first element.  *See* ECF No. 33-1 at 11.

Under this standard, petty slights or minor annoyances are not materially adverse — plaintiff must show "retaliation that produces an injury or harm." *Id.* at 67.

Under the third element, "temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of . . . the prima facie case . . . ." *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).

### 2. *Application*

The Complaint alleges the following adverse employment actions based on retaliation: (1) Scott was required to wear safety goggles when others were not; (2) Scott's requests for repairs to the vehicle he was assigned to drive were denied and as a result the vehicle was unsafe to drive; (3) on February 15, 2017, when Scott refused to drive the unsafe vehicle, he was reprimanded by two supervisors, including Bentley; (4) the next day, Bentley did not allow Scott to take a lunch break; (5) the day after that, Bentley hostilely ordered Scott to get out of his vehicle in front of other employees and did not allow him to return to work that day; and (6) after Scott changed his mind shortly after requesting and being approved for transfer, ManTech refused to cancel the transfer. Compl. ¶ 26. Scott alleges that he suffered psychologically as a result of ManTech's actions because his PTSD was exacerbated. *Id.* ¶ 27.

Under the totality of the circumstances, Scott's allegations are sufficient. In particular, Scott alleges that ManTech retaliated against him by refusing to repair his assigned vehicle, that the vehicle was then unsafe to drive (including having a faulty steering column), and after Scott refused to drive the unsafe vehicle, he was reprimanded. These acts, if true, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citations and quotation marks omitted).

ManTech also argues that Scott fails to adequately plead the third element — the causal connection between Scott's protected activity and the alleged adverse employment actions. ECF No. 33-1 at 21. The court disagrees because several key incidents occurred close in time to alleged adverse employment actions.

For example, the Complaint alleges that: (1) Scott made a formal complaint to ManTech about Traughber's behavior in January 2017 and ManTech issued its findings on March 17, 2017; (2) "shortly after making the complaint" Scott made several requests to repair his vehicle, which were denied; (3) on February 15, 2017, because Scott believed his vehicle was unsafe, he refused to transport soldiers in the vehicle; and (4) on February 16, 2017, Scott was

15

reprimanded by his superiors for refusing to transport the soldiers. Compl. ¶¶ 24, 26. These adverse employment actions alleged by Scott all occurred (1) within a month of Scott filing the complaint and (2) during the time period ManTech was investigating the complaint. Because the actions followed so closely in time to the protected activity, the causality requirement is sufficiently pled.

Accordingly, Scott has pled enough facts to state a claim for relief for retaliation that is plausible on its face.

## V. <u>CONCLUSION</u>

For the foregoing reasons, ManTech's Motion for Judgment on the Pleadings (Count I — Hostile Work Environment based on Racial Discrimination) is GRANTED with leave to amend; and ManTech's Motion for Judgment on the Pleadings (Count V — Retaliation) is DENIED.

///

///

///

///

///

///

///

///

The court will allow Scott an opportunity to file a First Amended Complaint ("FAC") to amend the Complaint's deficiencies outlined in this order, if he believes he can do so. The FAC is due by April 23, 2019. If no FAC is filed by that date, the case shall proceed with Count V as the sole remaining count.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 2, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scott v. ManTech Int'l, Corp.*, Civ No. 18-00359 JMS-KSC, Order Granting Motion for Judgment on the Pleadings, ECF No. 29, and Denying Motion for Judgment on the Pleadings, ECF No. 33